## CITY OF ST. LOUIS PARK AND OTHERS v. COUNTY OF HENNEPIN.

141 N. W. (2d) 21.

February 18, 1966—No. 39,751.

*Clayton L. LeFevere, Howard, Peterson, LeFevere, Lefler & Hamilton, H. H. Burry, Carl F. Dever, John G. Pidgeon,* and *Joseph C. Vesely,* for appellants.

*George M. Scott,* County Attorney, and *John K. Harvey,* Assistant County Attorney, for respondent.

PER CURIAM.

This appeal by 15 suburban municipalities of Hennepin County challenges the authority of the Board of County Commissioners of Hennepin County to levy ad valorem taxes upon all taxable property within the county to raise funds appropriated for the payment of two items of estimated expenses of operating the Hennepin County General Hospital during 1964 under L. 1963, c. 738.

This special act established a county hospital with responsibility for providing hospital and medical care for the poor and medically indigent and for others in emergencies, and for instruction and scientific research, by transferring the hospital properties, personnel, and functions from the city of Minneapolis, which previously operated the hospital, to the county. This transfer resulted from the city's threatened discontinuance of operating the hospital as an unjustified economic burden upon the taxpayers of the city, who for years supplied the funds needed to furnish services to patients unable to pay whether they resided within or without the city and also to maintain the hospital as a teaching institution for the training of nurses, interns, and other hospital personnel.

We are told that when the proposal was pending before the 1963 legislature the suburban areas opposed the transfer. Included in their opposition

was the contention that they should not be called upon to bear the unrecovered cost of operation disproportionately to the use which persons residing in their areas made of its facilities, when such use was relatively minor compared to the use made by residents of the city and residents outside the county. The extent of use was disputed, but no one disputes that the act effecting the transfer was designed to accommodate that opposition. The opposing views were compromised by providing that taxes levied to raise the funds required to be annually appropriated over and above estimated revenues must be levied upon designated areas in proportion to the use and nonpayment of hospital services furnished to residents of each designated area. The basic scheme of the act was to divide prospective patients according to three residential areas: Those residing in the city of Minneapolis; those residing outside the city but in the county, including the suburbs; and those residing outside Hennepin County.

Summarizing the act as we read it, it provides that, before any levy to raise the funds appropriated, the county board must (1) fix the charges for various hospital services; (2) prepare a budget based upon estimates of expenditures and revenues; (3) obtain the record of the total charges made but not collected for services furnished during the prior fiscal year; and (4) separate the amounts of such charges recorded for services furnished to residents of Minneapolis, to county residents outside Minneapolis, and to residents outside the county. After giving notice by filing a copy of this report together with the estimate of the "mill rates of taxes necessary to be levied" with the clerk of each town or municipality in the county, the board thereupon is required to establish the amount of the levies and the mill rate. Section 3, subd. 3, of the act then empowers the board to make the levy in these words:

"* * * The board shall then levy upon all taxable property within the boundaries of the city of Minneapolis an ad valorem tax in an aggregate amount proportionate to the amount of such unrecovered charges recorded for Minneapolis residents; on all taxable property within the area of the county outside Minneapolis an ad valorem tax in an aggregate amount proportionate to the amount of such unrecovered charges recorded for residents of that area; and on all taxable property within the county an ad valorem tax in an aggregate amount proportionate to the amount of such unrecovered charges recorded for persons having no legal settlement within the county. These taxes shall be levied in amounts sufficient to produce the total amount appropriated under subdivision 2 for the following fiscal year and shall be credited when received to the hospital fund, in addition to the balance on hand at the beginning of that year and the revenues received from charges collected thereafter. * * *"

In establishing the amount of the levies and the mill rate for each area to raise the funds appropriated for 1964, the board isolated two items of estimated cost designated as "Educational Services" and "Emergency and Ambulance Service," totaling approximately $860,000,[1] and determined that the funds appropriated for these items should be recovered by a countywide levy rather than proportionately in accordance with the language quoted above. The basis for this determination was that, since the educational-services item represented 50 percent of the cost of training and research from which patients received no direct benefit and since the board, in fixing charges to be made to all patients for services furnished, is expressly empowered to include only those charges found "to be reasonable," the board has the implied power to recover such costs as are not reasonably assessable to patient care by a levy upon the entire county. As to the item representing an estimate of the cost of emergency ambulance service to patients who reside outside the city of Minneapolis, the board was informed that there existed no history of the ratio of use by suburban and out-of-county residents of this new service in comparison to the use by residents of Minneapolis prior to transfer. Hence, no reliable estimate of use being supplied by the hospital staff, the board determined that the only alternative for the first fiscal year of operation for this item was also a countywide levy.

The trial court's approval of both administrative decisions provokes this appeal. The suburban municipalities vigorously contend that such levies exceed the powers conferred upon the board.

While we would be inclined to agree with the court's approval of the levy to recover funds appropriated for emergency ambulance service for 1964 because any error could be adjusted in subsequent years, the interpretation with respect to this item is no longer in dispute. After records of the ratio of use for 1964 became available, the board established the levies and mill rate for this item in conformity with subd. 3 of § 3.[2]

We are of the opinion that § 3, subds. 3, 5, and 6, expressly prescribe the mode and limit the extent of the board's authority to levy the taxes necessary to raise the funds which may be appropriated over and above estimated receipts.[3] Subds. 5 and 6 place specific mill limitations on any countywide levies to raise authorized appropriations for replacement, planning, and for

---

[1] The amount estimated for educational services was $630,552, and for emergency and ambulance service, $230,000.

[2] We are also told that the board, by a divided vote, is similarly levying taxes for the funds appropriated for fiscal 1966 to recover the estimated cost of the item previously isolated and separately designated as "Educational Services" in the 1964 budget.

[3] Municipalities have no authority to levy taxes except as authorized by

payment of any bonds issued. Subd. 3 specifically requires levies by areas sufficient to produce the total amount authorized to be appropriated (from taxes to be levied) for all expenses of current operation and routine maintenance. These provisions vest no discretionary authority in the board to exclude from any levies authorized some part of the operating cost which the board deems may not reasonably be assessed against patients required to be billed for services rendered. Nor is such authority to be implied from subd. 1 of § 3, granting discretionary authority to fix reasonable charges. This provision is not concerned with the recovery of funds appropriated but only directs that the board shall fix the charges based upon actual cost, subject to a determination of reasonableness. To be sure, subd. 1 of § 3, directing the board to fix charges for various services, does vest in the board discretionary authority to determine the reasonableness of the charges so fixed. It is conceivable that the fixed charges could be less than actual costs. It should be noted, however, that for 1964 the fixed charges were based upon actual cost; thus, if every patient paid all costs of services furnished, all operating costs, including the so-called cost of educational services, would be recovered. But, neither this provision nor the teaching function of the hospital supports a reasonable inference that the provisions empowering the board to levy taxes to raise the funds appropriated are enlarged to the extent of vesting the board with discretionary authority to determine upon what area the tax burden for any item of cost appropriated may be levied.

To approve the board's administrative interpretation of the act would effect a modification of the precise manner and mode by which the board is required to exercise its delegated power to levy taxes. Such a modification would be contrary to the scheme of the act and directly conflict with the intention of the legislature as clearly expressed in subds. 3, 5, and 6 of § 3. Its effect would impose upon the county taxpayers outside Minneapolis a disproportionate burden for the unrecovered costs of operation since the levy made is not in proportion to the use and nonpayment of services furnished to patients residing in that area.[4] In our opinion, the formula for spreading the tax burden for funds appropriated must be followed whether or not any item of estimated cost directly benefits the patients. Had the legislature intended to grant the board discretionary tax-levying power, the

---

the legislature, and any grant of the tax-levying power must be strictly construed. 18 Dunnell, Dig. (3 ed.) § 9118.

[4] The use by county patients residing outside Minneapolis averages less than 3 percent, while the assessed valuation of property located within that area approximates 38 percent of the total assessed valuation of the entire county; hence, that area would bear 38 percent rather than 3 percent of the cost of "Educational Services."

demonstrated skill of those who drafted and passed upon this act could easily have reflected such intention in clear and explicit language.

The act provides that, where it is found upon appeal that the board has improperly determined the tax levies, the district court has power to effect adjustment by ordering an "increase or reduction of * * * the taxes to be levied thereafter." L. 1963, c. 738, § 7.

The matter is therefore remanded to the district court to make the necessary adjustments.

Reversed with directions.